**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| Milton Wade and Noah Wright, individually and on behalf of all other similarly situated,<br><br>                 Plaintiff,<br>v.<br><br>Trek Bicycle Corporation,<br><br>                 Defendant. | Case No. 3:26-cv-552<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Milton Wade and Noah Wright, individually and on behalf of the Classes defined herein of similarly situated consumers, bring this class action suit for damages and equitable relief against Trek Bicycle Corporation ("Defendant" or "Trek"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves and the investigation of their counsel, and on information and belief as to all other allegations.

## NATURE OF THE ACTION

1.    Trek designs, manufactures, imports, and sells bicycles, bicycle parts and components, and bicycle accessories to consumers ranging from hobbyist to elite cyclists.

2.    Beginning in February 2025, President Trump issued a series of executive orders invoking the International Emergency Economic Powers Act ("IEEPA") to impose new and significant tariffs ("subject tariffs") on imports from nearly every foreign country, including those from which Trek sources its products.

3.    Following the imposition of the subject tariffs, Trek publicly stated that it would implement price increases across its product lines to manage the financial impact of the subject tariffs. Consistent with these statements, Trek increased the retail prices for its products in the United States to account for the cost of the newly imposed tariffs. Plaintiffs and the Class

1

purchased Trek products after these price increases took effect and, as a result, paid higher prices reflecting these tariff-related adjustments ("tariff surcharges").

4.      At the same time, Trek challenged the legality of the subject tariffs in the United States Court of International Trade, seeking to halt enforcement of the tariff orders and obtain refunds of the duties it paid because of the subject tariffs.[1]

5.      In demanding a refund for duties paid because of the subject tariffs, Trek did not acknowledge that it had passed on the economic burden of those duties onto consumers through tariff-specific surcharges. This case before the Court of International Trade was stayed pending the Supreme Court's resolution of *V.O.S. Selections, Inc. v. Trump*, in which businesses challenged the lawfulness of the subject tariffs.

6.      On February 20, 2026, the Supreme Court held that the subject tariffs were unlawful. *Learning Res., Inc. v. Trump*, 607 U.S. __, Nos. 24-1287, 25-250, 2026 WL 477534, at *13–14 (Feb. 20, 2026). On remand, the Court of International Trade directed CBP to refund all IEEPA duties that were collected.

7.      Despite seeking and now being entitled to a refund of the duties collected as a result of the subject tariffs, Trek has not refunded the tariff surcharges it collected from consumers. Upon the determination that the subject tariffs were unlawful, giving rise to Trek's right to receive the duties it paid under the unlawful tariff scheme, Trek was likewise obligated to return the corresponding tariff surcharge collected from Plaintiffs and Class members. Trek's retention of those surcharges unjustly profits Trek at the expense of consumers.

---

[1] Complaint, *Trek Bicycle Corp. v. United States, et al.*, No. 25-cv-00917 (Ct. Int'l Trade Dec. 23, 2026), Dkt. No. 2 (hereinafter "CIT Complaint").

8.      Accordingly, Plaintiffs, on behalf of themselves and the estimated thousands of similarly situated consumers, seek to ensure that their and the proposed Classes' contributions to paying the subject tariffs are returned and to demand appropriate monetary, equitable, injunctive, and declaratory relief.

## PARTIES

### I.      PLAINTIFFS

9.      Plaintiff Milton Wade is a New Jersey resident. On August 8, 2025, Wade purchased a current year model Trek bicycle from Trek Bicycle Walled Lake in Walled Lake, Michigan. Plaintiff Wade was charged an increased price for his purchase that included the tariff surcharge Trek imposed.

10.     Plaintiff Noah Wright is an Illinois resident. On February 10, 2026, Wright purchased a current year model Trek bicycle from Trek Bicycle Chicago Wicker Park in Chicago, Illinois. Plaintiff Wade was charged an increased price for his purchase that included the tariff surcharge Trek imposed.

### II.     DEFENDANT

11.     Defendant Trek Bicycle Corporation is a privately-held company incorporated under the laws of Wisconsin. Trek's principal place of business is located at 801 West Madison Street, Waterloo, Wisconsin, 53594.

12.     Trek markets, distributes, and sells its products to consumers throughout the United States, including within this District.

13.     At all times relevant to this Complaint, Trek was authorized to conduct and conducted business in the State of Wisconsin, and regularly marketed, distributed, and sold its products to consumers throughout the United States, including in this District.

## JURISDICTION

14.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 putative members in the proposed Class, and at least one Class member (e.g., Plaintiffs) is a citizen of a state different from any Defendant.

15.    The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged are part of the same case or controversy.

16.    The Court has personal jurisdiction over Trek because its principal place of business is in this district. The Court also has personal jurisdiction over Trek because it committed the acts alleged herein in Wisconsin, regularly conducts business in this District, and has extensive contacts with this forum, including by selling and shipping its products to consumers in this District.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS

18.    Trek is a global bicycle and cycling company that designs, manufactures, imports, and sells bicycles, bicycle frames, components, apparel, footwear, and accessories.[2] Trek operates across the entire bicycle industry including designing, manufacturing, importing, and retailing its products.

---

[2] *See Trek Mission and Values*, Trek, https://tinyurl.com/3vtr5ppa (last accessed, June 4, 2026).

19. By its own admission, Trek is an importer of merchandise into the United States subject to the challenged subject tariffs described below.[3]

20. Trek owns and controls direct-to-consumer retail storefronts and e-commerce outlets for its products, including company-owned Trek retail stores across the United States and its direct-to-consumer e-commerce platform at trekbikes.com.[4]

21. Trek also sells its products through a network of authorized independent bicycle dealers throughout the United States, through which it distributes its products nationwide. On information and belief, Trek designates only certain retailers as authorized dealers and tightly controls this designation.

22. Trek tightly controls retail pricing directly in each stream of sales through its Manufacturer's Suggested Retail Price ("MSRP") structure. Trek unilaterally sets and publishes MSRP for its products. And, on information and belief, Trek prohibits independent dealers from going lower than the MSRP for current year model bikes. On information and belief, Trek also exercises control over the prices at which its products are advertised at its independent dealers through a Minimum Advertised Price ("MAP") policy.

23. Through these pricing mechanisms, Trek has effective control of the prices of its products across all retail channels nationwide. This is especially true in the case of Trek's independent dealers because Trek may revoke its agreement with a dealer to enforce its pricing strategy, leaving those dealers unable to sell Trek bikes.

---

[3] CIT Complaint, *supra* n. 1.

[4] *See Trek Mission and Values*, supra n. 2.

## I.   PRESIDENT TRUMP ORDERS A SERIES OF TARIFFS.

24.   Beginning in February 2025, President Trump issued a series of executive orders imposing new tariffs under the International Emergency Economic Powers Act (IEEPA), each tied to a declared national emergency.

25.   On February 1, 2025, President Trump issued three orders directed at Mexico, Canada, and China, collectively referred to as the "Trafficking Tariff Orders."

26.   The executive order directed at Mexico imposed an additional 25 percent tariff on the import of goods from Mexico.[5]

27.   The executive order directed at Canada imposed a 25 percent tariff on the import of goods from Canada, with certain exceptions.[6]

28.   The executive order directed at China imposed an additional 10 percent *ad valorem* tariff on the import of goods from China on top of existing duties.[7] Through a series of amendments to this executive order, President Trump increased the tariff on the import of goods from China to 20%.[8]

---

[5] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).

[6] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025).

[7] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[8] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

29.     On April 2, 2025, President Trump issued a separate order—the "Reciprocal Tariff Order"—declaring U.S. trade deficits a national emergency.[9] Effective April 9, this order imposed a 10% baseline tariff on nearly all imports and added higher, country-specific "reciprocal" tariffs on 57 countries ranging from 11% to 50%.[10]

30.     Within days, China imposed retaliatory tariffs and the President raised the reciprocal tariff on China from 34% to 84%, and the next day increased it again to 125%, while temporarily suspending elevated tariffs for other countries.[11] When combined with the trafficking tariff, most Chinese imports now faced a minimum 145% tariff.

## II.     TREK CHARGED CONSUMERS MORE BECAUSE OF THESE TARIFFS.

31.     Although they may be nominally directed extraterritorially, the increased costs created by the subject tariffs are borne almost entirely by U.S. consumers.[12] The Dallas Federal Reserve concluded that the subject tariffs materially increased consumer prices and that the "pass-through from the 2025 tariffs is effectively complete."[13] In other words, that the costs of subject tariffs were ultimately borne exclusively by consumers.

---

[9] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

[10] *Id*.

[11] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025); Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025); Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).

[12] Julian Hinz, et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. (Jan. 19, 2026), https://tinyurl.com/ypsczz8y.

[13] *See* Ron Mau & Tucker Smith, *Effects of Realized Tariff Changes on PCE Prices Peaked in the First Quarter of 2026*, Fed. Rsrv. Bank of Dallas (May 5, 2026), https://tinyurl.com/57km4bx7.

32.     While importers must pay the subject tariffs at the border, wholesalers, manufacturers, and retailers all face a choice: whether to absorb the burden of the subject tariffs or to pass that burden on to their customers.[14] In most cases, including in the case of Trek, the burden of tariffs is eventually passed on to U.S. consumers through retail price increases.[15]

33.     In a May 2025 survey of businesses in the New York-New Jersey region conducted by the Federal Reserve Bank of New York, three-quarters of both manufacturing and service businesses facing tariff-induced cost increases reported they passed along at least some of these higher costs to their customers by raising prices.[16] Among those businesses, 40% of manufacturers reported passing along greater than 75% of the tariff-induced cost to their customers.[17] Trek's actions exemplify this process.

34.     Trek asserts in its Court of International Trade Complaint that it paid and continued to pay duties imposed by the subject tariffs on a "continuous basis."[18] To offset these IEEPA duties, Trek admits it passes tariff-induced cost increases on to its consumers.

35.     On April 17, 2026, Trek informed its authorized dealers in an email that bike prices for most models would rise immediately "to a level that needs to be addressed" due to the subject Tariffs.[19]

---

[14] Hinz, *supra* n.18 at 7.

[15] *Id.*

[16] Jaison R. Abel, et al., *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y. (June 4, 2025), https://tinyurl.com/4sjnwbrp.

[17] *Id.*

[18] CIT Complaint at 8, *supra* n.2.

[19] *Trek Tells Retailers of Immediate Price Increases*, Bicycle Retailer (Apr. 17, 2025), https://tinyurl.com/4w6red34.

36. In this email, Trek indicated that the price increases would also include all backorders and asserted that the increases would be positive for dealers.[20] Specifically, Trek indicated that these additional costs would be passed on to the consumers, telling its authorized dealers that the "value of your current inventory has just gone up, and moving forward, you will experience an increase in your [gross profit] dollars for bikes sold."[21]

37. In an April 2025, interview Trek CEO John Burk stated that "[w]e just increased our prices last week—10%."[22] And reports across the cycling industry describe these increased prices as a result of the subject tariffs.[23]

38. The increased prices were determined by Trek and imposed unilaterally on Trek retailers, including independent dealers. These tariff surcharges on Trek's products directly affected retail pricing for all Trek consumers.

39. Trek applied these tariff surcharges across its products and caused Trek's consumers to pay a higher price for those products to cover the cost of the tariff duties. This is especially the case because Trek, as manufacturer, importer, distributer, and often retailer, has control over every aspect of the pricing for its products either directly or through its agreements with independent authorized dealers.

---

[20] *Id.*

[21] *Id.*

[22] Fortune Magazine, *Trek Built a $2B Business. Now Tariffs Are Jeopardizing Its Future,* YouTube, (May 7, 2025), https://tinyurl.com/4ka66pp2.

[23] *See, e.g.*, *Specialized, Trek, Raise Prices as New Tariffs Take Affect*, BikeMag (Apr. 21, 2025), https://tinyurl.com/yss64srw; *Trek, Slate, and Specialized Raise Bike Prices While Other Brands Limit US Releases—Is this Just the Beginning?*, Cycling Weekly (Apr 21, 2025), https://tinyurl.com/yss64srw; *Trek and Specialized Make it Official: Bikes are Going to Get More Expensive*, Escape (Apr. 18, 2025), https://tinyurl.com/bdh38hcm.

40.    Trek's tariff surcharges were designed to pass the costs resulting from the subject tariffs on to consumers via increased product prices.

41.    Plaintiffs and each member of the Class purchased one or more of Trek's products after the subject tariffs were imposed. At that time, Plaintiffs and the Class paid tariff surcharges to Trek.

**III.    TREK SOUGHT AND IS ENTITLED TO REFUNDS OF DUTIES PAID.**

42.    In April 2025, several companies sued in the Court of International Trade challenging the legality of President Trump's executive orders and the resulting tariffs ("Challenged Tariff Orders").[24] That Court held the Challenged Tariff Orders were unlawful because they exceeded the President's authority under the IEEPA, granted declaratory relief that the Challenged orders were invalid as contrary to law, and issued a universal permanent injunction enjoining enforcement of the tariffs.

43.    The Federal Circuit affirmed the Court of International Trade's determination regarding the unlawfulness of the Challenged Tariff Orders and grant of declaratory relief but vacated the universal injunction *en banc*.[25]

44.    The Federal Circuit stayed its decision pending the Government's petition for a writ of certiorari and the Supreme Court's subsequent decision.[26] The Supreme Court granted certiorari and heard oral argument in *V.O.S. Selections, et al. v. Trump*, on November 5, 2025.

---

[24] *See* Complaint, *V.O.S. Selections, et al. v. Trump, et al.*, No. 25-cv-00066 (Ct. Int'l Trade Apr. 14, 2025), Dkt. No. 2.

[25] *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1347 (Fed. Cir. 2025), *cert. granted*, 146 S. Ct. 73, 222 L. Ed. 2d 1231 (2025).

[26] Order, *V.O.S. Selections*, 149 F.4th at 1347 (Aug. 29, 2025), Dkt. No. 161.

45. Following the Federal Circuit's decision, on December 23, 2025, Trek sued the federal government including U.S. Customs and Border Protection (CBP) in the Court of International Trade seeking to enjoin enforcement of the Challenged Tariff Orders and an order refunding all unlawful duties collected from Trek.[27] Shortly thereafter, the case was stayed pending the Supreme Court's determination in *V.O.S. Selections*.[28]

46. Just as with the Plaintiffs in *V.O.S. Selections*, Trek asserts the Challenged Tariff Orders are unlawful and sought a court order requiring the Government to refund "all IEEPA tariffs collected from Plaintiff as of the date of such order, with interest as provided by law."[29]

47. In its complaint, Trek makes no mention of the consumers, including Plaintiffs and the Class members, who bore the burden of the subject tariffs through a tariff surcharge implemented by Trek.

48. Nor has Trek stated its intention to return tariff surcharges to consumers if it is issued a refund. Notably, other companies like FedEx have made such assurances to consumers stating that "if refunds are issued to FedEx, we will issue refunds to the shippers and consumers who originally bore those charges."[30] UPS has likewise committed to refunding tariff payments to its customers who paid for them, stating that UPS "will request and retrieve IEEPA tariff refunds

---

[27] CIT Complaint at 10, *supra* n. 1.

[28] Text Entry, *Trek Bicycle Corp. v. United States, et al.*, No. 1:25-cv-00917 (Dec. 23, 2025), Dkt. No. 7.

[29] *Id.*

[30] *Navigating U.S. Tariffs and Customs Regulations*, FedEx, https://tinyurl.com/y66sxmxe (last visited June 4, 2026).

from CBP on our customers' behalf. . . . [a]fter we receive the funds from CBP, we have established a process to issue refunds to the payors."[31]

49.    On February 20, 2026, the Supreme Court of the United States held that the subject tariffs are unlawful because the imposition of such tariffs exceeds President's authority under the IEEPA. *Learning Res.*, 2026 WL 477534, at *13–14. In so doing, the Supreme Court affirmed the judgment of the Court of Appeals in *V.O.S. Selections, Inc.*, 149 F.4th 1312. Given this unappealable decision, there is now no ambiguity as to the unlawfulness of the subject tariffs. And as Justice Kavanaugh noted in his dissent, "the interim effects of the Court's decision could be substantial," including requiring the United States to "refund billions of dollars to importers who paid the [subject] tariffs, even though some importers may have already passed on costs to consumers or other." *Learning Res., Inc. v. Trump*, 607 U.S. __, Nos. 24-1287, 25-250, 2026 WL 477534, at *51 (U.S. Feb. 20, 2026) (Kavanaugh, J., dissenting).

50.    On April 17, 2026, following remand, the Court of International Trade directed CBP to (1) liquidate any unliquidated entries that were subject to IEEPA duties without applying those duties, and (2) reliquidate without IEEPA duties any liquidated entries for which liquidation is not yet final. This means CBP must refund all IEEPA duties that were collected.

51.    CBP has set up a new system called the Consolidated Administration and Processing of Entries (CAPE) tool, which importers can use to submit refund requests. Once a CAPE Declaration is accepted, CBP removes the IEEPA tariff codes from the entry summaries, recalculates duties as if the IEEPA charges were never assessed, and prepares a refund for the difference—with interest included automatically.

---

[31] *IEEPA Tariff Refund Process*, UPS, https://tinyurl.com/yc6mx956 (last visited June 4, 2026).

52.     As Justice Kavanaugh anticipated, Trek sought and is entitled to a refund for tariff payments it has already passed on to consumers. To the extent that Trek is entitled to a refund for its payments of the subject tariffs, Plaintiffs and the Class are entitled to restitution of the tariff surcharge Trek charged them at the time of their purchases. If Trek retains the refund of tariffs that it did not ultimately bear the full expense of in the first place, and which were instead borne by consumers, Trek will receive an unjust windfall of funds that rightfully belong to Plaintiffs and the Class.

53.     If Plaintiffs and the Class had known that Trek would unfairly retain the tariff surcharge Trek imposed on consumers despite asserting the subject tariffs were illegal, they would not have purchased or would have paid less for Trek's products.

## CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated (the "Nationwide Class") as a class action pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4). Plaintiffs seek certification of a Class initially defined as follows:

> **Nationwide Class:** All individuals in the United States who purchased a Trek product through Trek or at an authorized Trek dealer within the Class Period.

55.     Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4), Plaintiff Wright brings this action on behalf of the following Illinois Subclass initially defined as:

> **Illinois Subclass:** All individuals in the state of Illinois who purchased a Trek product through Trek or at an authorized Trek dealer within the Class Period.

56.     The Nationwide Class is referred to herein as the "Class," and the Illinois Subclass is referred to herein as the "Subclass," unless otherwise stated.

57.     Excluded from the above Class and Subclass are Trek, including any entity in which Trek has a controlling interest, is a parent or subsidiary, or which is controlled by Trek, as well as

13

the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Trek. Also excluded are the judges and court personnel in this case and any members of their immediate families.

58.     Plaintiffs reserve the right to amend the Class or Subclass definitions if discovery and further investigation reveal that the Class or Subclass should be expanded or otherwise modified.

59.     The Class Period begins on February 1, 2025, up to the date this action was commenced and continues through the present and the date of judgement. Plaintiffs reserve the right to amend or modify the Class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues. As described below, the Class and the Subclass both satisfy the elements of Fed. R. Civ. P. 23(a) and Rule 23(b).

60.     **Numerosity**. The Class and Subclass members are so numerous that joinder of each individual Class member would be impracticable and unfeasible. The Class consists of thousands of Trek customers who made purchases during the Class Period, and the Subclass includes several hundred, if not more, customers. The customers included in the Class and Subclass are ascertainable, as the identities can be determined by objective means. The Class and Subclass are, however, so large that Class and Subclass members cannot be consolidated in one complaint and it, therefore, would be impractical for each to bring suit individually. Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

61.     **Commonality and Predominance.** There is a well-defined community of interest among the Class and Subclass members and common questions of both law and fact predominate over questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

14

1.   Whether Defendant passed on tariff-related charges onto customers;

2.   Whether consumers paid increased prices for Defendant's products attributable to the cost of tariffs;

3.   The amount to which consumers paid for the costs of tariffs;

4.   Whether Defendant's retention of tariff refunds is unjust without payment;

5.   Whether Defendant acted unfairly or deceptively by charging consumers for tariff-related costs and then retaining any reimbursements of those tariff charges;

6.   Whether Plaintiffs and the Class and Subclass members are entitled to equitable relief, including, but not limited to, restitution as requested in this Complaint;

7.   Whether Defendant's conduct has harmed Plaintiffs and the Class and Subclass uniformly; and

8.   Whether declaratory relief would afford uniform benefits to the Class.

62.   **Typicality.** Plaintiffs' claims are typical of those of the Class and Subclass members in that they arise out of the same course of wrongful conduct committed by Defendant, including its inequitable retention of tariff refunds which rightfully belong to Plaintiffs and Class members. Plaintiffs and Class members have experienced the same harm, including loss of a uniform tariff surcharge on their purchases. The effort Plaintiffs undertake to pursue their own claims will significantly benefit the Class members because of the identical nature of the issues across the Class.

63.   **Adequacy of Representation.** Plaintiffs will continue to fairly and adequately represent and protect the interests of the members of the Class and Subclass. Plaintiffs share a

15

common interest with the Class members, with respect to the conduct of the Defendant herein and redress of injury. Plaintiffs have suffered an injury-in-fact because of the conduct of the Defendant, as alleged herein. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex class actions. Plaintiffs and their counsel intend to prosecute this action vigorously and faithfully for the benefit of the Class members. Plaintiffs and Plaintiffs' counsel have no contrary interests to the Class members and will fairly and adequately protect the interests of the Class.

64.    **Rule 23(b)(2) Class Certification is Appropriate.** Plaintiffs seek specific declaratory relief that would provide relief to the entire Class and Subclass and would remedy a Class-wide harm. Plaintiffs and Class and Subclass members have been harmed due to a uniform course of conduct. Defendant subjected Plaintiffs and Class and Subclass members to the same unfair, unlawful, and unfair practices and harmed them in the same manner by retaining tariff refunds that rightfully belonged to Plaintiffs and Class and Subclass members.

65.    A uniform declaration would benefit the Class and Subclass as a whole. Plaintiffs seek declaratory relief that would prevent Defendant from unfairly retaining tariff refunds consisting of Plaintiffs' monies and require Defendant to return those monies to Plaintiffs and the Class.

<u>**CLAIMS FOR RELIEF**</u>

**COUNT I**
**Money Had and Received**
(On Behalf of Plaintiffs and the Nationwide Class)

66.    Plaintiffs incorporate by reference the facts alleged above.

67.    Plaintiffs allege this claim individually and on behalf of the proposed Class.

68.    Defendant received money from Plaintiffs and from each member of the proposed Class in the form of a tariff surcharge. The Supreme Court has determined that the tariffs were unlawful.

69.    The money belonged to Plaintiffs and to each member of the proposed Class.

70.    Defendant has not returned the money.

71.    It will give offense to equity and good conscience if Defendant is permitted to retain the tariff surcharge. Plaintiffs seek the return of the money in an amount to be proven at trial.

72.    Plaintiffs seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to him.

## COUNT II
### Unjust Enrichment
(On Behalf of Plaintiffs and the Nationwide Class)

73.    Plaintiffs incorporate by reference the facts alleged above.

74.    Plaintiffs allege this claim individually and on behalf of the proposed Class.

75.    As described herein, Defendant charged Plaintiffs and each member of the proposed Class tariff surcharges when they purchased Defendant's products. By collecting these tariff surcharges, Defendant received and knowingly and willingly accepted a direct benefit at Plaintiffs and the members of the proposed Class's expense. The Supreme Court has determined that the tariffs were unlawful.

76.    It would be unjust for Defendant to retain tariff surcharges to cover the expense of the subject tariffs when Defendant is entitled to a refund for the subject tariffs paid.

77.    Defendant's unjust conduct was the proximate cause, and a substantial factor, in causing Plaintiffs and the members of the proposed Class's losses and damages.

78.    Plaintiffs seek the return of the tariff surcharges in an amount to be proven at trial.

## COUNT III
### Declaratory Relief, 28 U.S.C. § 2201
(On Behalf of Plaintiffs and the Nationwide Class)

79.    Plaintiffs incorporate by reference the facts alleged above.

80.    Plaintiffs allege this claim individually and on behalf of the proposed Class.

81.    Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

82.    Plaintiffs' claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

83.    Plaintiffs have suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiffs will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

84.    This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiffs but refunded to Defendant is unlawful for any of the above reasons.

## COUNT IV
### 815 Ill. Comp. Stat. §§ 505, et seq. (Illinois Consumer Fraud Act or "ICFA")
(Plaintiff Wright on Behalf of the Illinois Class)

85.    Plaintiff Wright incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

86.    Defendant is a "person[]" as defined by 815 Ill. Comp. Stat. § 505/1(c).

87.    Plaintiff Wright and the Illinois Class members are "consumers" as defined by 815 Ill. Comp. Stat. § 505/1(e).

88.    Defendant's conduct as described herein was in the conduct of "trade" and/or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).

89.     815 Ill. Comp. Stat. § 505/2 declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices" in "the conduct of any trade or commerce" in Illinois.

90.     Defendant's retention of tariff refunds despite having shifted those costs to consumers via tariff surcharges is an unfair practice under 815 Ill. Comp. Stat. § 505/2. Consumers paid more than the value they received, and Defendant unlawfully kept the resulting surplus.

91.     Plaintiff Wright and the Illinois Class have been injured because of Defendant's unfair practices, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the tariff surcharge.

92.     As a result of Defendant's violations of the ICFA, Plaintiff Wright and the Illinois Class seek all available damages, including statutory damages, in addition to reasonable attorneys' fees and costs, and injunctive relief to prevent Defendant from engaging in the unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, respectfully request that the Court enter an order:

a.     Certifying the Classes as requested herein;

b.     Appointing Plaintiffs as Class Representative and undersigned counsel as Class Counsel;

c.     Finding that Defendant engaged in the unlawful conduct as alleged herein;

d.     Granting permanent injunctive relief to prohibit and prevent Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

e.     Awarding Plaintiffs and Class members compensatory, consequential, and general damages, including nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

19

f.      Granting the declaratory relief sought herein;

g.      Awarding statutory damages, trebled, and/or punitive or exemplary damages, to the extent permitted by law;

h.      Ordering disgorgement and restitution of all profits received or retained by Defendant as a result of its unfair acts, omissions, and practices;

i.      Awarding to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses; and

j.      That the Court grant such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a jury trial.


Dated: June 12, 2026                  Respectfully submitted,

**ZIMMERMAN REED LLP**

*/s/ Charles R. Toomajian III*

June P. Hoidal (MN #033330X)
Charles R. Toomajian III (MN #0397879)
Michael J. Laird (MN #0398436)
Katja D. Lange (MN #0504952)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
June.Hoidal@zimmreed.com
Charles.Toomajian@zimmreed.com
Michael.Laird@zimmreed.com
Katja.Lange@zimmreed.com

*Attorneys for Plaintiffs and the Proposed Class*